UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
XUE SHAN WANG,

                              Plaintiff,                                   **OPINION & ORDER**

               -against-                                          **21-CV-6271 (LGS) (VF)**

NEW YORK CITY DEPARTMENT OF YOUTH AND
COMMUNITY DEVELOPMENT, et al,

                              Defendants.
------------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge**

      Before the Court is a motion by Plaintiff Xue Shan Wang pursuant to Rule 15(d) of the Federal Rules of Civil Procedure to supplement her complaint. See ECF No. 81. The New York City Department of Youth and Community Development, the City of New York, Nevita Bailey, Lisa Thornton, and Ardis Sanmoogan (collectively, "Defendants") oppose the motion. See ECF No. 83. For the following reasons, Plaintiff's motion is **GRANTED.**

## BACKGROUND

  A. Allegations in Plaintiff's Complaint

      On or about November 23, 2009, Plaintiff was hired by the City of New York as a Civil Service Accountant Level 1, with a "functional title" of Budget Analyst. See ECF No. 1 ("Compl.") ¶ 22. Around July 18, 2016, Plaintiff was hired by the City Department of Youth and Community Development with a "functional title" of Senior Budget Analyst and an annual salary of $85,000. Compl. ¶ 24. On April 17, 2017, Plaintiff was promoted to an Administrative Staff Analyst, with a salary of $88,794. Id. ¶ 25.

      In June 2017, Plaintiff was diagnosed with Palatal Myoclonus, which causes an individual to "display[ ] Parkinson like symptoms[ ] in their mouth," affecting the person's

ability to speak and eat.[1] Id. ¶ 26. On February 18, 2018, at her request, Plaintiff was transferred to the position of Associate Staff Analyst "which would allow her to have a reduced workload" to "better manage" her illness. Id. ¶ 28. As a result of the transfer, Plaintiff's salary was reduced to $87,500. Id. Plaintiff "continued to work hard" and was offered a promotion to "Deputy Director" in February 2018. Id. ¶¶ 29-30.

On April 9, 2018, Plaintiff requested a reduced workload, but her request was denied. Id. ¶ 31. On April 19, 2018, Plaintiff requested six months of sick leave due to her illness and her request was approved on May 1, 2018. Id. ¶¶ 33-34. Plaintiff was approved for a six-month leave under the Family and Medical Leave Act ("FMLA"), from April 19, 2018, until October 18, 2018. Id. ¶ 34. During her FMLA leave, Plaintiff was diagnosed with anxiety disorder. Id. ¶ 35.

On October 5, 2018, Plaintiff informed Thornton that she had been cleared by her doctor to return to work, but that she "needed some reasonable accommodation to perform her work due to her disabilities." Id. ¶ 36. Plaintiff requested a reduced workload and a transfer to a different unit where she would not need to speak. Id. ¶ 37. On October 9, 2019, Thornton approved Plaintiff's return to work, but denied her request for an accommodation. Id. ¶ 38. On October 10, 2018, Plaintiff submitted an EEOC inquiry against the City Department of Youth and Community Development for its failure to provide her with a reasonable accommodation. Id. ¶ 39.

Upon her return to work, Sanmoogan provided Plaintiff with a "task list" that included 13 tasks covering the time period from February 28, 2018, to December 31, 2019, thereby providing Plaintiff "with a significant increased amount of work immediately upon her return to work." Id. ¶ 41. On October 12, 2018, Plaintiff sent an e-mail to Sanmoogan, requesting that her tasks be

---

[1] Dorland's Illustrated Medical Dictionary defines palatal myoclonus as "rapid, rhythmic, up-and-down movements of one side or both sides of the palate." Palatal Myoclonus, Dorland's Illustrated Medical Dictionary (33d ed. 2020).

modified given her request for accommodations due to her illness. Id. ¶ 42. Sanmoogan denied Plaintiff's request and sent her a letter with "pretextual reasons" criticizing Plaintiff. Id. ¶¶ 44-46.

On November 14, 2018, Plaintiff submitted a reasonable accommodation request to Thornton, requesting that she be allowed to communicate by e-mail with other employees. Id. ¶ 47. Due to her anxiety disorder, Plaintiff also requested a transfer to a position "with a functional title of Program Finance Analyst" which would require her to perform less tasks. Id. ¶ 48. According to Plaintiff, the requirements and responsibilities of the Program Finance Analyst "are very similar to Plaintiff's current position." Id.

On November 15, 2018, Thornton informed Plaintiff that she would be allowed to communicate by e-mail only and she would be provided a dictation device to speak for her; Plaintiff's request to be transferred to another position was denied. Id. ¶¶ 50-51. Plaintiff was told that she would have to go through "a formal interview process" to be transferred internally. Id. ¶ 51. Sanmoogan continued to "falsely accuse Plaintiff of refusing to work on her assignments in retaliation for Plaintiff's FMLA leave and request for reasonable accommodation." Id. ¶ 52.

On November 28, 2028, Plaintiff sent an e-mail to Thornton, Sanmoogan, and Associate Commissioner Jagdeen Phanor, requesting to modify her task list. Id. ¶ 54. In response, Sanmoogan admonished Plaintiff for sending the e-mail to people outside of Sanmoogan's chain of command, even though Plaintiff was replying to the people Sanmoogan had included in his e-mail. Id. ¶ 55. On December 10, 2018, Sanmoogan sent to Plaintiff a portion of the employee Code of Conduct via e-mail, as a threat to further discipline Plaintiff for requesting the location of a report she was working on. Id. ¶ 56. That same day, Sanmoogan told Plaintiff to finish a

3

project on a shorter timeline than was given to her colleagues for a similar project. Id. ¶ 57. Then, in a meeting held on December 14, 2018, Defendants denied Plaintiff's request to transfer to a different unit and denied her request to modify her task list. Id. ¶ 58. In the meeting, Plaintiff was falsely accused of including staff outside of her unit in her e-mail regarding personnel matters. Id. On December 18, 2018, Sanmoogan sent Plaintiff a Code of Conduct again to compel Plaintiff to meet with her, despite Plaintiffs difficulties speaking due to her Palatal Myoclonus and despite Thorton giving Plaintiff permission to communicate via e-mail. Id. ¶ 60. The same day, Sanmoogan told Plaintiff that her workday would be video recorded, which was done to "further harass" Plaintiff. Id. ¶ 61. The next day, December 19, 2018, Sanmoogan increased Plaintiff's workload by assigning Plaintiff some of her colleagues' tasks. Id. ¶ 63. On December 20, 2018, Sanmoogan falsely accused Plaintiff of refusing to perform assigned tasks when Plaintiff took sixteen minutes to respond to an e-mail. Id. ¶ 64

On January 28, 2019, Plaintiff filed an EEOC charge, alleging disability discrimination. Id. ¶ 66. Between February 1, 2019, and March 12, 2019, Sanmoogan "falsely accused" Plaintiff of failing to manage her work assignments, doing her work incorrectly, and "pretending not to remember things." Id. ¶¶ 67-70. On March 12, 2019, Plaintiff was approved for "special sick leave" from May 20, 2019, to September 30, 2019; she returned to work on October 1, 2019. Id. ¶¶ 71-72.

On February 19, 2020, Defendant Thornton called a meeting with Plaintiff, Bailey, Associate Commissioner Maria Osorio, and Grievance Representative Sharon Jack. Id. ¶ 73. At the meeting, Plaintiff was informed that Defendants wanted to transfer Plaintiff to the Cornerstone Unit as a "Facilities and Operations Analyst," a position that would not fit

4

Plaintiff's experience and skills. Id. ¶¶ 73-74. Plaintiff was told that the purpose of the transfer was because Sanmoogan refused to accommodate Plaintiff's disability. Id. ¶ 76.

On March 2, 2020, Plaintiff submitted another EEOC inquiry, which was formalized into an EEOC charge on May 29, 2020. Id. ¶ 77. On March 9, 2020, Plaintiff wrote an e-mail to the Youth and Community Development Deputy Commissioner, Alan Cheng, complaining about Defendants' discriminatory and retaliatory conduct, such as the transfer to a new unit. Id. ¶ 78. In an e-mail from Thornton on March 10, 2020, Plaintiff was told that Sanmoogan's unit had been negatively affected by Plaintiff's performance, even though Sanmoogan had lost half of her staff to transfers and resignations. Id. ¶¶ 79-80.

On April 3, 2020, Sanmoogan assigned Plaintiff a task that would usually have been assigned to someone in the accounting department without giving Plaintiff access to the information needed to perform the task. Id. ¶ 84. When Plaintiff asked for "support and further direction" to complete the task, Plaintiff was admonished via e-mail. Id. ¶ 85. On May 15, 2020, Sanmoogan issued Plaintiff a memo that stated "prior pretextual reasons" why Plaintiff did not perform assigned tasks. Id. ¶ 87.

Plaintiff also alleges several instances of discrimination and retaliation from June 2020 to August 2020. Plaintiff claims that Defendants required Plaintiff to communicate verbally in virtual meetings rather than using the meeting platform's chat function "to make Plaintiff's life more difficult," when Sanmoogan allowed another employee, without a disability, to use the chat function during the meeting. Id. ¶¶ 88-89. Additionally, Sanmoogan continued to increase Plaintiff's tasks "to set her up for failure" and on June 15, 2020, "falsely accused" Plaintiff of failing to perform a task when Sanmoogan had asked her to spend her time on a different task. Id. ¶¶ 90-91. Then, on July 7, 2020, Sanmoogan falsely accused Plaintiff of not focusing on a

5

task when Plaintiff sent a one-sentence question to a colleague to clarify one of Plaintiff's tasks. Id. ¶ 94. On August 10, 2020, Bailey falsely accused Plaintiff of "insubordination, failure to communicate and not being available during work hours," but when Plaintiff questioned Bailey about the allegations she could not substantiate the accusations. Id. ¶ 96.

On November 17, 2020, Plaintiff received a "Notice and Statement of Charges and Specifications" from Defendants, alleging that she violated the code of conduct for the City Department of Youth and Community Development. Id. ¶ 98. Defendants sought to suspend Plaintiff for fifteen work days without pay. Id. Plaintiff disputed those charges, but the charges were upheld on December 18, 2020. Id. ¶¶ 99, 101. Plaintiff appealed the decision, and a grievance hearing was held on January 13, 2021. Id. ¶ 102. While a decision was pending on the appeal, Sanmoogan, Bailey, and others falsely accused Plaintiff of failing to timely respond to an e-mail concerning a work assignment. Id. ¶¶ 103-06.

On January 25, 2021, the City Department of Youth and Community Development upheld the findings of the Notice and Statement of Charges and Specifications, and Plaintiff subsequently requested an appeal to the Commissioner of Labor Relationships. Id. ¶ 107. While awaiting a hearing, Defendants continued to embarrass, harass, and marginalize Plaintiff. Id. ¶¶ 108-112, 115. On June 1, 2021, the Office of Labor Relations upheld Plaintiff's suspension. Id. ¶ 114. As a result, Plaintiff was suspended without pay for fifteen workdays, between June 7, 2021 and July 23, 2021. Id. ¶ 114.

B. Allegations in Plaintiff's Proposed Supplemental Complaint

In her supplemental complaint, Plaintiff alleges that Defendants engaged in further retaliatory conduct after Plaintiff commenced this case. See ECF No. 81-1 at ¶¶ 7, 17. Specifically, on May 17, 2023, Defendants issued Plaintiff another "Notice and Statement of

6

Charge and Specifications" seeking to terminate her employment (the "May 2023 Charge"). See id. at ¶¶ 119-20. The May 2023 Charge "states that the period of Plaintiff's alleged misconduct covered the time period starting from October 2021." Id. ¶ 120. Then, on May 26, 2023, Plaintiff was told by Sanmoogan that the Department would be reorganized and as a result of that reorganization, Plaintiff would be assigned to work in a "revenue sub-unit" within the Finance unit, even though Plaintiff had done "almost exclusively" expense-related work since joining the Department. Id. ¶¶ 121-23. Meanwhile, others in the Department were told that they would be assigned to units "in which they have experience." Id. ¶ 125. Plaintiff alleges that her assignment to an area where "she has virtually no experience" was retaliatory. Id. ¶ 127.

C. Procedural History

Plaintiff filed her initial complaint on July 23, 2021, asserting seven causes of action: a claim against the City and the Department of Youth and Community Development for disability discrimination in violation of the Americans with Disabilities Act ("ADA"); a claim against all Defendants for disability discrimination in violation of the New York State Human Rights Law ("NYSHRL"); a claim against all Defendants for disability discrimination in violation of the New York City Human Rights Law ("NYCHRL"); claims against all Defendants for retaliation in violation of the ADA, the NYSHRL, and the NYCHRL; and a claim against the City and the Department of Youth and Community Development for retaliation in violation of the FMLA. See Compl. ¶¶ 13, 117-60.

Defendants filed their answer to the complaint on October 1, 2021. See ECF No. 29. Initially, the fact discovery deadline was March 4, 2022. ECF No. 32. That deadline was extended six times and fact discovery closed on June 8, 2023. See ECF Nos. 48, 57, 62, 72, 76, 80.

Plaintiff now seeks permission to file a supplemental complaint to raise two additional retaliatory acts that Plaintiff claims Defendants took after the filing of the initial complaint. See ECF Nos. 81, 86, 92. Specifically, Plaintiff alleges that the May 2023 Charge and her transfer to another unit were in retaliation for her having filed the instant complaint. See ECF No. 81 at 1-2. Plaintiff indicates in one of her letter briefs that she also seeks to incorporate into the supplemental complaint that she was terminated on July 10, 2023. See ECF No. 86 at 1 n.1, 3. Plaintiff does not seek to add any new claims or new defendants. Defendants oppose Plaintiff's motion, arguing that the allegations in the proposed supplemental complaint fails to connect to the allegations in the original complaint and, in any case, are futile. See ECF Nos. 83, 89. Defendants also argue that the proposed supplemental complaint will cause undue delay. See ECF No. 83 at 2.

## DISCUSSION

A. Legal Standard

Under Rule 15(d), a party may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Any supplemental facts contained in a supplemental pleading must be "connected to the original pleading." Kleeberg v. Eber, 331 F.R.D. 302, 315 (S.D.N.Y. 2019); see also Albrecht v. Long Island R.R., 134 F.R.D. 40, 41 (E.D.N.Y. 1991) ("A supplemental pleading is designed to cover matters that occur subsequent to the filing of the complaint, but pertain to the original pleadings."). When there is no "nexus between the events alleged in [the] original complaint and those alleged in [the] proposed supplemental complaint," or if the new events did not arise "out of the same conduct or occurrence as those in the original

pleading," leave to supplement a complaint will be properly denied. Girard v. Collao, No. 18-CV-2026 (NSR), 2022 WL 409098, at *3 (S.D.N.Y. Feb. 9, 2022) (citation omitted).

The Second Circuit has indicated that "[a] district court may grant a motion to file a supplemental pleading 'in the exercise of its discretion, upon reasonable notice and upon such terms as may be just.'" Chen-Oster v. Goldman, Sachs & Co., No. 10-CV-6950 (AT) (JCF), 2017 WL 1378265, at *8 (S.D.N.Y. Apr. 12, 2017) (quoting Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995)). "Absent undue delay, bad faith, dilatory tactics, and undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." Id. (internal quotation marks omitted) (quoting Quaratino, 71 F.3d at 66); see also Bornholdt v. Brady, 869 F.2d 57, 68 (2d Cir. 1989) ("An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party."). Stated otherwise, Rule 15(d) "reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties." Witkowich v. Gonzales, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008).

A court may independently deny leave to supplement a complaint "on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." Ortiz v. Westchester Med. Ctr. Health Care Corp., No. 15-CV-5432 (NSR), 2016 WL 6901314, at *4 (S.D.N.Y. Nov. 18, 2016) (quoting Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110-11 (2d Cir. 2001). In determining whether a proposed supplemental complaint is futile, a court must treat the motion to supplement in the same manner as a motion to dismiss, looking only at the face of the complaint, any documents referred or attached to the pleadings, and

accepting all the allegations in the complaint as true. See Rivers v. N.Y.C. Housing Auth., 2014 WL 1311557, at *4 (E.D.N.Y. Mar. 31, 2014) (citing Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 604 (2d Cir. 2005)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (internal citation omitted). Dismissal under Rule 12(b)(6) is, in turn, warranted "only if it appears beyond a doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief." Lamb v. Henderson, No. 98-CV-2756 (RWS), 1999 WL 596271, at *2 (S.D.N.Y. 1999) (citations omitted). "The burden is on the non-moving party to demonstrate the existence of such grounds." Growblox Scis., Inc. v. GCM Admin. Servs., LLC, No. 14-CV-2280 (ER), 2016 WL 1718388, at *4 (S.D.N.Y. Apr. 29, 2016).

Lastly, the "good cause" analysis under Federal Rule of Civil Procedure 16 does not apply to a Rule 15(d) motion to supplement a complaint. Mason Tenders Dist. Council v. Phase Constr. Servs., Inc., 318 F.R.D. 28, 37 n.10 (S.D.N.Y. 2016). Consequently, "a party seeking to supplement pleadings under Rule 15(d) is not required to demonstrate "good cause" under Rule 16(b)(4) since this latter provision pertains solely to motions to amend." Beckett v. Inc. Vill. of Freeport, No. 11-CV-2163 (LDW) (AKT), 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014).

B. Analysis

Defendants argue that Plaintiff should not be permitted to file a supplemental complaint because: (1) the proposed supplemental complaint fails to connect to the original complaint; (2) the proposed supplemental complaint will cause undue delay; and (3) the proposed supplemental complaint is futile. See ECF No. 83 at 1-3; ECF No. 89 at 1-4. However, applying the liberal standards of Rule 15(d), Plaintiff should be permitted to supplement the claims raised in her

initial pleading, with new factual allegations concerning events that occurred subsequent to the filing of the original complaint but stem from the same conduct as the events in the original complaint.

First, Defendants' arguments that Plaintiff has not demonstrated a sufficient nexus between the allegations in her original complaint and the allegations in her proposed supplemental complaint fails. See ECF No. 83 at 1-2; ECF No. 89 at 1-2. In support of their argument, Defendants rely heavily on Bright v. Annucci, No. 18-CV-11111 (NSR), 2022 WL 17959476, at *4 (S.D.N.Y. Dec. 27, 2022). In Bright, the Court denied a request to file a supplemental complaint that contained new allegations occurring nearly five years after the events alleged in the underlying complaint. 2022 WL 17959476, at *4. In denying the motion, the Court also relied on the fact that the new allegations took place at a different correctional facility located in a different judicial district. Id. Given the weakness of any "common link" between the claims in the plaintiff's supplemental complaint and the claims in the original complaint, the Court reasoned that to the extent the plaintiff asserted new claims arising several years after those included in the underlying complaint and occurring at a different facility, his remedy was to commence a new, separate action. Id.

Bright is readily distinguishable. Plaintiff's proposed supplemental allegations detail how the May 2023 Charge and the subsequent reassignment of Plaintiff's work fit within the alleged pattern of Defendants' retaliatory acts contained in the original complaint. ECF No. 81-1 ¶¶ 119-27. The May 2023 Charge is based on Plaintiff's alleged misconduct beginning in October 2021, id. ¶ 120, which is only two months after Defendants were served with the original complaint in August 2021, see ECF Nos. 14-18. And the original complaint includes allegations pertaining to through July 2021, only a few months before the conduct in the supplemental pleading. See

11

Compl. ¶ 114. Further, the proposed supplemental allegations involve the same individual defendants that were named in the original complaint, and the allegations pertain to the same place of employment as is at the center of the original complaint. Additionally, Plaintiff alleges that the May 2023 Charge was done in retaliation for her complaint in this case. See, e.g., ECF No. 81-1 ¶¶ 150, 153. In short, the proposed supplemental allegations arise out of the same set of facts that form the basis of Plaintiff's original claims. See Witkowich, 541 F. Supp. at 590 (finding new allegations were "closely related" to those raised in original complaint because new allegations involved the same subject matter, many of the same people, and the same employer defendants); cf. McLean v. Scully, No. 90-CV-2590 (SWK), 1991 WL 274327, at *1 (S.D.N.Y. Dec. 9, 1991) (denying motion to supplement complaint because newly asserted claims represented "an entirely separate incident"); Beckett, 2014 WL 1330557, at *12 (determining that new allegations were not closely related to those raised in original complaint because series of events in proposed allegations arose from "totally different charges," involved different parties, and represented "two entirely different transactions").

Next, Defendants' argument that the allegations in Plaintiff's proposed supplemental complaint are futile also fails. See ECF No. 83 at 2-3; ECF No. 89 at 3-4. Defendants assert that the proposed supplemental allegations do not state a claim for retaliation and would not withstand a motion to dismiss. ECF No. 83 at 2-3; ECF No. 89 at 3-4. But Defendants incorrectly analyze the proposed supplemental allegations in isolation, ignoring that Plaintiff's supplemental allegations are alleged to be part of the same pattern of discrimination raised in the in the initial complaint, as is evident from the fact that Plaintiff is not alleging any new claims based on the supplemental allegations. Plaintiff is not using her supplemental complaint to bring new retaliation claims, but instead to "set forth new facts in order to update the earlier pleading,"

and further support her existing claims. 6A Charles A. Wright, et al., Federal Practice and Procedure (2010) § 1504 at 245, 249; see also Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 226-27 (1964) (stating that Rule 15(d) permits the proposed amended/supplemental complaint, which did not assert a new cause of action, but merely alleged new conduct supporting the existing cause of action).

Viewed together with the allegations in the original complaint, Plaintiff's supplemental allegations only further support her claims of discrimination and retaliation. The proposed allegations in the supplemental complaint detail that Defendants issued Plaintiff the May 2023 Charge and reassigned her work duties in retaliation for commencement of the instant litigation in violation of the ADA, NYSHRL, and NYCHRL. See ECF No. 81-1 ¶¶ 153, 160, 165, 168. To state a claim for retaliation under the ADA or the NYSHRL, Plaintiff's pleading must plausibly suggest that: (1) "she engaged in protected activity," (2) "the employer was aware of this activity," (3) she was subjected to an adverse employment action," and (4) "a causal connection existed between the alleged adverse employment action and her protected activity." McGuire-Welch v. House of the Good Shepherd, 720 F. App'x 58, 62 (2d Cir. 2018) (summary order) (citing Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002)). The elements of a prima facie case of retaliation under the NYCHRL are identical, "except that the plaintiff need not prove any 'adverse' employment action; instead, she must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." Leon v. Columbia Univ. Med. Ctr., No. 11-CV-8559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks omitted).

Defendants argue that the May 2023 Charge and the work reassignment do not constitute adverse employment actions. See ECF No. 83 at 2-3; ECF No. 89 at 3-4. These new allegations,

13

however, cannot be viewed in isolation because Plaintiff is not alleging a claim based solely on these allegations. "[A]lleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." Puglisi v. Town of Hempstead Sanitary Dist. No. 2, No. 11-CV-0445 (PKC), 2013 WL 6061984, at *4 (E.D.N.Y. Nov. 15, 2013) (citing Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 689 (2d Cir. 2012)). The allegations concerning the May 2023 Charge and the work reassignment are alleged to be part of a pattern of Defendants' retaliatory conduct, which includes false accusations concerning Plaintiff's refusal to work or not adequately performing her work, admonition of Plaintiff in front of her colleagues, threats of discipline and disciplinary action, reassignment of Plaintiff's duties, increased workload, and refusal to provide accommodations for her disability. See Compl. ¶¶ 41, 44-46, 52, 55-56, 58 63, 64, 74-74, 98, 103-06. Collectively, these allegations suffice to plausibly allege that Plaintiff suffered an adverse employment action under the ADA, NYSHRL, and NYCHRL. See Bernheim v. Litt, 79 F .3d 318, 324-36 (2d Cir. 1996) (claim survives 12(b)(6) motion because allegations of demotion, reduced preparation time, assignment to remote classroom despite plaintiff's known disabilities, and negative evaluations sufficed to state a claim of actionable adverse action, even though if "treated separately" many would be "trivial" and might be subject to "prun[ing]" at a later stage); see also Phillips v. Bowen, 278 F.3d 103, 108-09 (2d Cir. 2002) (explaining that where plaintiff proved "a pattern of nearly constant harassment . . . that took place over a period of several years," the "combination of seemingly minor incidents . . . reach[ed] a critical mass" of "unreasonable inferiority" sufficient to support retaliation claim).

Lastly, Defendants' argument that Plaintiff's supplemental pleading "will cause undue delay" is meritless. See ECF No. 83 at 2; ECF No. 89 at 2-3. The "undue delay" analysis under

Rule 15(d) does not examine whether a supplemental pleading will *cause* undue delay, but instead whether "the motion is *made* after inordinate delay [and] no satisfactory explanation is offered for the delay." Qanouni v. D&H Ladies Apparel LLC, No. 18-CV-2763 (GBD) (DF), 2021 WL 9036182, at *6 (S.D.N.Y. Mar. 23, 2021) (quoting Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000)) (emphasis added). Fact discovery in this case closed on June 8, 2023, see ECF No. 80, and Plaintiff filed her motion to supplement the complaint a few days later on June 13, see ECF No. 81. Additionally, allegations in the supplemental complaint occurred shortly before Plaintiff sought leave to supplement the complaint on June 8, 2023. See ECF No. 81-1 ¶¶119-27 (alleging two incidents that occurred on May 17 and May 26, 2023). Plaintiff therefore did not unduly delay in seeking to supplement the complaint. And courts in this Circuit have granted motions to amend despite significantly longer delays.[2] See, e.g., Contrera v Langer, 314 F. Supp. 3d 562, 575 (S.D.N.Y. 2018) (allowing amendment two years after the original complaint was filed even when the plaintiffs had knowledge of the claims they sought to add at the outset of the litigation and noting that "mere delay absent a showing of bad faith or undue prejudice does not provide a basis . . . to deny the right to amend"); Valentini v. Citigroup, Inc., No. 11-CV-1355, 2013 WL 4407065, at *7 (S.D.N.Y. Aug. 16, 2013) (finding delay of eighteen months "insufficient ground to warrant denial of [a] motion to amend" where non-moving party "failed to establish bad faith or undue prejudice"); Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 98 (S.D.N.Y. 2010) (allowing amendment two and one-half years after case began and noting that "even vague or 'thin' reasons [for delay] are sufficient, in the absence of prejudice or bad faith") (citation omitted).

---

[2] The standard for evaluating a motion to supplement is the same standard that applies to a motion to amend. See Destine v. Joseph, 20-CV-0082 (LTS) (OTW), 2021 WL 5827652, at *1 (S.D.N.Y. Dec. 8, 2021).

Moreover, dispositive motion practice has not commenced in this case and there is no trial date set. See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08-CV-9116 (PGG), 2009 WL 1357946, at *5 (S.D.N.Y. May 12, 2009) (citing lack of pending dispositive motions or trial date as one basis for allowing amendment); A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (granting leave to amend where trial date had not been set and claims against new defendants did "not raise factual claims unrelated to the events" in the original complaint). Defendants complain about the additional discovery a supplemental pleading will require. ECF No. 83 at 2. Of course, any amendment would require additional discovery, but that discovery here should not significantly prolong the resolution of this case. The new factual allegations are limited to just two discrete incidents that occurred in May 2023; they concern the same defendants as in the original complaint; and the supplemental complaint does not raise any new claims. See De Jesus v. Subway IP Inc., No. 16-CV-6773 (VSB), 2018 WL 3442888, at *3 (S.D.N.Y. July 17, 2018) (granting leave to amend and finding no undue prejudice where additional discovery necessitated by the amendment would be limited).

In sum, Plaintiff is granted leave to file the supplemental complaint at ECF No. 81-1. As noted above, see supra at 8, Plaintiff indicated in a letter brief that she also seeks to incorporate in the supplemental complaint that she was terminated on July 10, 2023. Because this allegation stems from the May 2023 Charge, Plaintiff may also include this factual allegation in the supplemental complaint. Discovery in this matter is reopened until May 31, 2024, but only to address discovery related to the new factual allegations in the supplemental complaint.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to supplement the Complaint is **GRANTED**.

**SO ORDERED.**

DATED:   New York, New York
         March 19, 2024

                                              VALERIE FIGUEREDO
                                              United States Magistrate Judge