UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- X

XUE SHAN WANG                                            :
                                                        :
                                                        :     **21-cv-6271(LGS)(VF)**
                                    Plaintiff,           :
                                                        :     **FIRST SUPPLEMENTAL**
                       -against-                         :     **COMPLAINT**
                                                        :
                                                        :
                                                        :     **JURY TRIAL DEMANDED**
NEW YORK CITY DEPARTMENT OF YOUTH                        :
AND COMMUNITY DEVELOPMENT, CITY OF                       :
NEW YORK, NEVITA BAILEY, LISA                            :
THORNTON and ARDIS SANMOOGAN,                           :
                                                        :
                                                        :
                                    Defendants.          :
---------------------------------------------------------- X


Plaintiff Xue Shan Wang ("Plaintiff"), by and through her counsel William K. Li Law,

PLLC, for her First Supplemental Complaint against Defendants New York City Department of

Youth and Community Development ("Defendant NYCDYCD"), City of New York ("Defendant

NYC"), Nevita Bailey ("Defendant Bailey" or "Bailey"), Lisa Thornton ("Defendant Thornton"

or "Thornton") and Ardis Sanmoogan ("Defendant Sanmoogan" or "Sanmoogan") (collectively

"Defendants") alleges as follows:

## INTRODUCTION

1.      Plaintiff was, and continues to be, at all relevant times an employee of Defendants

NYCDYCD and NYC, and resided, and still resides, in New York City.

2.      Plaintiff is an individual with disabilities.

3.      Plaintiff has been an employee with Defendant NYC since on or about November 23, 2009 and also an employee of Defendant NYCDYCD since on or about July 18, 2016.

4.      Plaintiff opposes discrimination and retaliation.

5.      Defendants have horribly discriminated, and continue to discriminate, against Plaintiff for her disabilities, failed to provide her with reasonable accommodation and retaliated against her for complaining about her disability discrimination at the workplace.

6.      Defendants have furthermore retaliated against Plaintiff for having taken a Family and Medical Leave Act leave.

7.      Defendants have recently engaged in further retaliatory conduct against Plaintiff for her commencement of this instant case.

8.      Defendant NYCDYCD is an agency of the Defendant NYC and has, at all relevant times, over fifteen (15) employees.

9.      Defendant NYC is a municipality and/or city in the State of New York and has, at all relevant times, over fifteen (15) employees.

10.     Defendant Bailey has individual liability under both New York State Human Rights Law and New York City Human Rights Law as she aided and/or abetted in the discrimination and retaliation of Plaintiff.

11.     Defendant Thornton has individual liability under both New York State Human Rights Law and New York City Human Rights Law as she aided and/or abetted in the discrimination and retaliation of Plaintiff.

12.     Defendant Sanmoogan has individual liability under both New York State Human Rights Law and New York City Human Rights Law as she aided and/or abetted in the discrimination and retaliation of Plaintiff.

13.     Defendant NYCDYCD maintains its principal place of business at 2 Lafayette Street, New York, New York 10007.

## NATURE OF THE ACTION

14.     This action is brought against Defendants to redress the deprivation of rights secured to Plaintiff by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C § 12101 *et seq.* ("ADA"), Family and Medical Leave Act, as amended, 29 U.S.C. § 2601 *et seq.* ("FMLA"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, ("NYSHRL") and New York City Administrative Code § 8-101 *et seq.* ("NYCHRL").

15.     Plaintiff alleges that Defendants discriminated against her based on her disability and failed to provide her with reasonable accommodation.

16.     Plaintiff further alleges that Defendants retaliated against her for complaining about being discriminated against based on her disability and for having taken leave pursuant to FMLA.

17.     Plaintiff also alleges that Defendants retaliated against her for initiating this instant case.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over Plaintiff's ADA and FMLA claims pursuant to 28 U.S.C. §§ 1343 and 1331, because the claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights. This Court has supplemental subject matter jurisdiction over Plaintiff's State and City law claims under 28 U.S.C. § 1367(a), because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

19.     Declaratory and injunctive relief is sought under 28 U.S.C. § 2001 *et seq.*

20.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), and 42 U.S.C. § 2000e-5(f)(3), because Defendants have offices, conduct business, and can be found in this District, and because the causes of action arose and the acts and omissions complained of occurred in this District.

## CONDITIONS PRECEDENT

21.     On or about May 29, 2020 Plaintiff filed a charge of discrimination and retaliation with United States Equal Employment Opportunity Commission ("EEOC") (charge number 520-2020-02784) against Defendant NYCDYCD.

22.     On or about May 3, 2021, the EEOC issued a Notice of Right to Sue.

23.     On or about July 23, 2021, Plaintiff filed this case within ninety (90) days of receipt of the Notice of Right to Sue letter from the EEOC.

## FACTS

24.     On or about November 23, 2009 Plaintiff was hired by Defendant NYC as a Civil Service Accountant Level 1, with a functional title of Budget Analyst by the New York City Department of Transportation with an annual salary of $38,303.

25.     Plaintiff first started experiencing symptoms related to Palatal Myoclonus in or about January 2016 to which she started seeking medical consultations with doctors.

26.     On or about July 18, 2016, Plaintiff was hired by Defendants NYCDYCD and NYC with a Civil Service Title of Associate Staff Analyst at Defendant NYCDYCD, with a functional title of Senior Budget Analyst with an annual salary of $85,000.

27.     On or about April 17, 2017, Plaintiff was promoted to the title of Administrative Staff Analyst and her salary was increased to $88,794.

28.     On or about June 24, 2017 Plaintiff was diagnosed with Palatal Myoclonus.

29.     People with Palatal Myoclonus, according to Plaintiff's doctor, display Parkinson like symptoms, in their mouth which affects that person's ability to speak and eat. Upon information and experience, people with Palatal Myoclonus also have a constant, annoying and sometimes painful rhythmic clicking sound in the ears.

30.     On or about February 18, 2018, Plaintiff requested to be transferred, and was granted, to the position of Associate Staff Analyst, which would allow her to have a reduced workload to better manage her Palatal Myoclonus. Plaintiff's salary was, as a result, reduced to $87,500.

31.     Despite suffering from the symptoms of Palatal Myoclonus, Plaintiff nevertheless continued to work hard while managing her disability.

32.     Indeed, on or about early February 2018, for Plaintiff's good work, she was offered to be promoted to the position with a functional title of Deputy Director, by her direct supervisor, Senior Budget Director of Defendant NYCDYCD Defendant Sanmoogan.

33.     On or about April 9, 2018, Plaintiff requested a reduced workload with Defendant Sanmoogan due to her Palatal Myoclonus symptoms, but was denied.

34.     On or about April 11, 2018, Plaintiff received praise for her work by Associate Commissioner, Bureau of Budget and Finance Jagdeen Phanor ("Phanor").

35.     On or about April 19, 2018, Plaintiff made a request for six (6) months of sick leave as a result of her Palatal Myoclonus with Defendant NYCDYCD's Assistant Commissioner for Human Resources and EEO Officer Defendant Thornton.

36.     On or about May 1, 2018, Plaintiff was approved for her six (6) months of sick leave, three (3) of which was based on FMLA leave, by Defendant Thornton from April 19, 2018 to October 18, 2018.

37.     On or about May 7, 2018, Plaintiff was also diagnosed with anxiety disorder.

38.     On or about October 5, 2018, Plaintiff, informed Defendant Thornton, through her union representative, that her doctor has cleared her to return to work starting on October 8, 2018 and thus earlier than expected. Plaintiff's doctor in addition stated that Plaintiff needed some reasonable accommodation to perform her work due to her disabilities.

39.     Specifically, Plaintiff needed a reduced workload and a transfer to a different unit where she does not need to speak as her Palatal Myoclonus makes it difficult for her to speak or even chew food. Furthermore, Plaintiff's condition could be worsened by excessive stress and speaking of more than about 10 to 15 minutes at a time. However, Plaintiff never received any response to her accommodation request.

40.     On or about October 9, 2018, Defendant Thornton approved Plaintiff's return to work on October 10, 2018 after Plaintiff followed-up with her on this issue. However, Defendant Thornton denied Plaintiff's request for accommodation without engaging her in the interactive process.

41.     On or about October 10, 2018, Plaintiff submitted an inquiry (charge number 520-2019-00117) with the EEOC against Defendant NYCDYCD for its failure to provide her with reasonable accommodation for her disability in violation of the ADA. However, Defendants' discriminatory and retaliatory conduct only intensified.

42.     On or about October 11, 2018, Plaintiff returned to work with a letter from her doctor stating again her need for reasonable accommodation for Palatal Myoclonus conditions. Plaintiff in addition asked Defendant Sanmoogan to communicate with her by emails only so to alleviate her need to speak.

43.     In addition to ignoring Plaintiff's request for reasonable accommodation,

Defendant Sanmoogan instead provided Plaintiff with a task list (known as a Tasks and Standard) with thirteen (13) tasks covering the time period from February 28, 2018 to December 31, 2018. This means that instead of providing Plaintiff with any reduction in work as requested, Defendant Sanmoogan has provided Plaintiff with a significant increased amount of work immediately upon her return to work.

44.      On or about October 12, 2018, Plaintiff emailed Defendant Sanmoogan informing her of a need to modify the Tasks and Standard without any response.

45.      On or about October 15, 2018, Plaintiff emailed her union regarding her request to have a modification to the Tasks and Standard.

46.      In response to Plaintiff's requests and complaints for reasonable accommodation, on or about October 19, 2018, Defendant Sanmoogan, with approval from, among others, Defendant Thornton, issued Plaintiff a "Memo" critiquing Plaintiff with pre-textual reasons, less than two (2) weeks after Plaintiff returned to work from her sick leave.

47.      By way of example, Defendant Sanmoogan criticized Plaintiff for having missed a meeting on or about October 15, 2018, a date that Defendant Sanmoogan was not even in the office.

48.      In another example, Defendant Sanmoogan demanded that Plaintiff to immediately make up for tasks she had missed while out on leave, including those that were not Plaintiff's responsibility.

49.      On or about November 14, 2018, Plaintiff submitted a reasonable accommodation request form to Defendant Thornton again requesting accommodation for her Palatal Myoclonus where Plaintiff needs to communicate by email with other employees.

50.      In addition, as a result of her anxiety disorder, Plaintiff requested a transfer to an

available position with a functional title of Program Finance Analyst, civil service title Associate Contract Specialist within NYCDYCD where Plaintiff will be required to perform lesser amount of tasks so to better manage her disabilities. This position's requirements and responsibilities are very similar to Plaintiff's current position, was on the same level and had the same salary.

51.     Such a transfer is, upon information and to Plaintiff's understanding, permitted under the Personnel Rules and Regulations of New York City, Rule VI, Personnel Changes, Section I, Transfer Part 1 and Part 9.

52.     On or about November 15, 2018, Defendant Thornton informed Plaintiff that Defendant was able to provide some reasonable accommodations for Plaintiff's Palatal Myoclonus by allowing her to communicate by email only and providing a dictation tool to speak on behalf of Plaintiff.

53.     However, Defendant Thornton denied Plaintiff's request for a transfer to another department by claiming that Plaintiff had to go through a formal interview process, even though Plaintiff has witnessed other employees who were transferred internally and despite what is stated in Personnel Rules and Regulations of New York City, Rule VI, Personnel Changes, Section I, Transfer Part 1 and Part 9.

54.     Nevertheless, Defendant Sanmoogan continued to falsely accuse Plaintiff of refusing to work on her assignments in retaliation for Plaintiff's FMLA leave and request for reasonable accommodation.

55.     In fear of further disciplinary action, Plaintiff had no choice but to sign and accept the strenuous Tasks and Assignment provided by Defendant Sanmoogan on or about November 27, 2018.

56.     On or about November 28, 2018, Plaintiff again emailed Defendant Thornton,

Defendant Sanmoogan and Phanor about her need for a modification to her Tasks and Standards.

57.    However, Defendant Thornton on the same day instead admonished Plaintiff for cc'ing people outside of her chain of command in an email, when Plaintiff was merely replying to all the people cc'd in Defendant Sanmoogan's email, her own personal email and that of her union representative.

58.    On or about December 10, 2018, Defendant Sanmoogan's discriminatory conduct further continued when she emailed the relevant portion of the employee Code of Conduct, as a threat to further discipline Plaintiff, in response to Plaintiff's simple request for the location of a report which she was working on.

59.    Then on the same day, Defendant Sanmoogan, instead of providing Plaintiff with any accommodation, decided to required Plaintiff to finish a project in less time than Plaintiff's colleagues for a similar project.

60.    On or about December 14, 2018, during a meeting with Defendant Thornton, Defendant Sanmoogan, Phanor, Associate General Counselor Penney Vachiraprapun, General Counsel Caroline Press, and Grievance Representative from Organization of Staff Analysts Union ("OSA Union") Kenneth Kearns, Defendants denied Plaintiff's request to be transfer to a different unit and her request for a Tasks and Standards modification to reduce the number of tasks. During the meeting, Phanor again falsely accused Plaintiff of cc'ing staff outside of her unit on emails regarding personnel issue as a part of Defendants' continued creation of pretextual reasons against Plaintiff.

61.    Defendant Sanmoogan continued to refuse to provide Plaintiff with any reasonable accommodation in completing her work in December 2018.

62.    On or about December 18, 2018, Defendant Sanmoogan again sent Plaintiff a Code

9

of Conduct to force Plaintiff to meet with her despite Plaintiff's disability of having difficulty speaking as a result of her Palatal Myoclonus. This was clearly done to harass and to set up Plaintiff for failure. This was done in contrary to Thornton's approval of allowing Plaintiff to communicate by emails.

63.    Also on or about December 18, 2018, Defendant Sanmoogan stated that she wants to further harass Plaintiff by recording her entire work day by video.

64.    On or about December 19, 2018, instead of reducing Plaintiff's tasks, Defendant Sanmoogan decided to assign Plaintiff's colleague's tasks so to increase her workload.

65.    On December 20, 2018, Defendant Sanmoogan falsely accused Plaintiff of refusing to perform an assigned task when Plaintiff did not respond to her email within a mere 16 minutes.

66.    Defendant Sanmoogan at this point has created an extreme sense of fear and anxiety in Plaintiff, which only exacerbated Plaintiff's medical conditions.

67.    On or about January 15, 2019, Defendant Sanmoogan requested to meet with Plaintiff in regard to a work assignment to which Plaintiff informed Sanmoogan that she is "afraid of her" and did not know "how [Plaintiff] will be insulted or treated badly again" given Sanmoogan's conduct thus far. Plaintiff has further stated her fear of Defendant Sanmoogan's intimidation and harassment in other occasions via email.

68.    On or about January 28, 2019, Plaintiff filed an EEOC charge (EEOC Charge number 520-2019-00117) on the basis of disability discrimination.

69.    On or about February 1, 2019, Defendant Sanmoogan falsely accused Plaintiff of her inability to manage her work assignments when this was simply caused by Sanmoogan's constant assignment of new tasks for Plaintiff.

70.    On or about March 4, 2019, Defendant Sanmoogan falsely accused Plaintiff of

incorrectly entering her work hours.

71.    On or about March 8, 2019, Defendant Sanmoogan falsely accused Plaintiff of doing her work incorrectly when this error was in fact caused by another employee.

72.    During a March 12, 2019 training, Defendant Sanmoogan sat at Plaintiff's cubicle and falsely accused Plaintiff of pretending to not remember things.

73.    On or about March 29, 2019, Plaintiff was approved for a special sick leave from May 20, 2019 to September 30, 2019 for her Palatal Myoclonus.

74.    Plaintiff returned to work from her sick leave on October 1, 2019. However, the discriminatory and retaliatory conduct continued.

75.    On or about February 19, 2020, Defendant Thornton initiated a meeting between Plaintiff, Defendant Thornton, Assistant Commissioner and Deputy Chief Financial Officer Defendant Bailey (who is Defendant Sanmoogan's direct supervisor and thus also in Plaintiff's chain of command), Associate Commissioner Office of Administration Maria Osorio and Grievance Representative from OSA Union Sharon Jack. Plaintiff was informed that Defendants wanted to transfer her to the Cornerstone Unit as a Facilities and Operations Analyst position. However, this is not a position that fits with Plaintiff's experience and skillset.

76.    The position which Defendants wanted Plaintiff to transfer to involved working with data, School Age Child Care licensing and Department of Health and Mental Hygiene while Plaintiff's skillset and experience are in finance and budgeting. Plaintiff was set up to fail had she been transferred to the Cornerstone Unit.

77.    It is also notable that Defendants have now changed their tune in claiming that Plaintiff could be transferred to another position instead of having to apply and interview in order to be transferred.

78.    Defendants conceded during this meeting that the reason for wanting to transfer Plaintiff was due to Defendant Sanmoogan's refusal to accommodate Plaintiff's disability.

79.    On or about March 2, 2020, Plaintiff submitted another EEOC inquiry (which was later formalized as an EEOC charge on or about May 29, 2020 with a charge number 520-2020-02784) in regard to the most recent discriminatory and retaliatory conduct by Defendants in regard to her disability.

80.    On or about March 9, 2020, Plaintiff wrote an email to Deputy Commissioner of Defendant NYCDYCD Alan Cheng ("Cheng"), complaining about Defendants' discriminatory and retaliatory conduct towards her, including the conduct of Defendant Thornton's role of trying to transfer Plaintiff to the Cornerstone department in order to set her up for failure.

81.    Shockingly, it was Defendant Thornton who responded to Plaintiff's email to Cheng on or about March 10, 2020, even though Defendant Thornton was the subject of one of the people which Plaintiff was complaining about.

82.    Defendant Thornton's March 10, 2020 email was repleted with inaccuracies. To make matters worse, Defendant Thornton further attempted to retaliate against Plaintiff by falsely alleging that Defendant Sanmoogan's unit's workflow has been substantially affected by Plaintiff's performance when in fact this was, based on Plaintiff's understanding, a result of Defendant Sanmoogan having lost a number of her staff members starting from in or about October 2018 due to transfers and resignations.

83.    Not knowing what else to do in light of the continued and increase discriminatory conduct, Plaintiff emailed Defendant NYCDYCD's Chief of Staff, John Cirolia ("Cirolia") on or about March 12, 2020 in regard to the situation which she was facing. However, on the same day, Cirolia responded by telling Plaintiff to report the conduct to Defendant NYCDYCD's internal

EEO, despite the fact that one of the discriminators, Thornton, is the agency's EEO officer.

84.     Despite Plaintiff's further clarification via email to Cirolia that Defendant Thornton is herself one of the discriminators and that it would be futile to report the discrimination to the EEO office, Cirolia simply responded, with indifference, of again telling Plaintiff to report the matter to Thornton. Cirolia further informed Plaintiff that this was the same recommendation made by Defendant NYCDYCD Commissioner Bill Chong.

85.     On or about March 16, 2020, all staff members, including Plaintiff, started working from home due to the Covid-19 pandemic.

86.     Nevertheless, Defendants continued to unfairly scrutinize Plaintiff's work as a way of creating pretext against her. For example, on or about April 3, 2020, Defendant Sanmoogan gave Plaintiff an assignment without providing Plaintiff access to the information needed to perform the task. Furthermore, this was a task that Plaintiff was never asked to do prior to her sick leave and was indeed a task which was usually assigned to someone in the accounting department.

87.     Plaintiff asked for support and further direction in completing this task. But instead, she was unfairly admonished by Phanor via email on or about April 8, 2020. In addition, Phanor directed Defendant Sanmoogan in the same email to "continue to document" Plaintiff and to try to find some workplace violation against Plaintiff.

88.     On or about May 15, 2020 Sanmoogan issued Plaintiff a "Memo" with the subject line "Failure to perform assigned tasks" which states and often rehashes the prior pretextual reasons which Defendants have previously alleged against Plaintiff.

89.     On or about May 28, 2020 Plaintiff had a virtual union grievance meeting in relation to the May 15, 2020 "Memo" issued by Defendant Sanmoogan. In attendance, in addition to Plaintiff, were Defendant Thornton, Defendant Sanmoogan, Defendant Bailey, Phanor, Deputy

General Counsel and Agency Advocate Latrisha Desrosiers ("Desrosiers"), and union grievance representatives Sharon Jack and Alice Moise.

90.    Despite the staff working remotely and Plaintiff's previously approved accommodation of using emails for communication, Defendant Sanmoogan nevertheless continued to demand Plaintiff to communicate verbally and went so far as to demand Plaintiff to go into the office on or about June 8, 2020 to pick up a work laptop containing a microphone in order for Plaintiff to communicate verbally in virtual meetings. This is simply another way for Defendants to make Plaintiff's life more difficult while refusing to provide her with any accommodations.

91.    Indeed, Defendant Sanmoogan allowed another employee without any disability to use the virtual meeting platform's chat function to respond during a June 15, 2020 meeting, but somehow required Plaintiff to respond verbally as a way of harassing her. After Plaintiff complained about this issue via email on or about June 22, 2020, Defendant Bailey stated that Plaintiff could respond via the chat function during virtual meetings.

92.    Meanwhile, Defendant Sanmoogan continued to unreasonably increase Plaintiff's tasks, rather than providing her with the accommodation she needed, in making her life difficult so to set up her for failure.

93.    On or about June 15, 2020, Defendant Sanmoogan falsely accused Plaintiff of failing to perform a bank reconciliation task when Defendant Sanmoogan had been asking Plaintiff to dedicate her time working on Technical Assistant reports.

94.    Plaintiff experienced technical issues with her work laptop, such as not being able to log in. These technical issues were not resolve by the IT department until after July 1, 2020.

95.    On or about July 2, 2020, Defendant Sanmoogan continued to find ways to

scrutinize Plaintiff and set her up for failure. Specifically, Defendant Sanmoogan falsely accused Plaintiff of not managing her workload via email when this was due to the fact that Defendant Sanmoogan had been dictating and prioritizing Plaintiff's assignments.

96.     On or about July 7, 2020, Defendant Sanmoogan falsely accused Plaintiff of not focusing on her work assignment when Plaintiff merely sent a 1 sentence question to a colleague for a simple clarification in relation to an assignment.

97.     On or about July 10, 2020, Defendant Sanmoogan continued to unfairly scrutinize and criticize Plaintiff, via email, by again accusing Plaintiff of not managing her workload when, as Plaintiff again responded that it was Defendant Sanmoogan who has been dictating Plaintiff's work priorities.

98.     On or about August 10, 2020, Defendant Bailey falsely accused Plaintiff, via email, of insubordination, failure to communicate and not being available during work hours. However, Defendant Bailey was not able to substantiate her accusations when questioned by Plaintiff.

99.     On or about August 14, 2020, Plaintiff emailed a complaint to Jennifer Magdits of the New York City Office of Labor Relations in regard to the Bailey's most recent harassing conduct.

100.     On or about November 17, 2020, Plaintiff received a "Notice and Statement of Charges and Specifications" from Defendants alleging that she violated Defendant NYCDYCD's code of conduct based on the pretextual reasons created by Defendants Sanmoogan and Bailey. Defendants sought to suspend Plaintiff for fifteen (15) workdays without pay.

101.     On or about December 2, 2020, an Informal Conference was held in relation to the November 17, 2020 Notice and Statement of Charges and Specifications where Plaintiff disputed the finding.

102.     On or about December 15, 2020, Defendant Sanmoogan invited Plaintiff to attend a virtual training relating to preparation of "discretionary reports" but completely ignored Plaintiff the entire time. Instead, Defendant Sanmoogan only communicated with the other trainee.

103.     On or about December 18, 2020 Defendant NYCDYCD upheld the charges in the November 17, 2020 Notice and Statement of Charges and Specifications against Plaintiff.

104.     On or about January 13, 2021, a Step II grievance hearing was held to appeal the December 18, 2020 decision.

105.     While waiting for the decision for the Step II grievance hearing, Defendants Sanmoogan and Bailey's harassing conduct continued.

106.     On or about January 20, 2021, Defendant Sanmoogan's falsely accused Plaintiff of not timely responding to an email in regard to an assignment.

107.     On or about January 22, 2021, Defendant Bailey falsely accused Plaintiff of not responding to an email from Defendant Sanmoogan in relation to a work assignment.

108.     On or about January 22, 2021, while Defendant Sanmoogan was out of office, Defendants had Senior Advisor Christopher Lewis continued to harass Plaintiff by falsely accusing her of not responding to a work assignment.

109.     On or about January 25, 2021, Defendant NYCDYCD upheld the findings of the November 17, 2020 Notice and Statement of Charges and Specifications, which was based on Defendants' pretextual conduct of setting Plaintiff up for failure. Plaintiff appealed this decision and requested a Step III appeal to the Commissioner of Labor Relations in writing within ten (10) days.

110.     On or about February 12, 2021, Defendant Sanmoogan again falsely accused Plaintiff of not timely responding to an email despite the fact that Plaintiff has already responded.

16

111.    On or about February 23, 2021, Defendant Sanmoogan only gave Plaintiff one (1) hour to perform a payment task while thanking another employee who took four (4) months to complete a similar task.

112.    To further humiliate Plaintiff, Defendant Sanmoogan allowed a lower ranking employee to assign work to Plaintiff on or about February 24, 2021.

113.    On or about February 23, 2021, Defendant Sanmoogan began to marginalize and further embarrass Plaintiff by assigning work which Plaintiff was working on to other employees without Plaintiff's knowledge.

114.    On or about March 5, 2021, both Defendants Sanmoogan and Bailey again marginalized Plaintiff in order to create pretextual reasons against Plaintiff. Specifically, during a virtual meeting involving Defendant Sanmoogan, Defendant Bailey and Plaintiff, Plaintiff informed both Sanmoogan and Bailey through the virtual meeting platform's chat function that she was not hearing any sounds. Nevertheless, Defendants Sanmoogan and Bailey both ignored Plaintiff and proceeded with the meeting and then left the meeting without informing Plaintiff. Despite being aware of Plaintiff's inability to hear anything, both Defendants Sanmoogan and Bailey sent an email after the meeting alleging that Plaintiff has agreed to certain things during the meeting.

115.    It was not until on or about March 18, 2021 that Plaintiff's computer sound issue was finally resolve by the IT department.

116.    A Step III grievance hearing with the Office of Labor Relations was held on or about March 30, 2021 in relation to the November 17, 2020 Notice and Statement of Charges and Specifications. The Office of Labor Relations subsequently upheld Plaintiff's suspension on or about June 1, 2021. Plaintiff served her fifteen (15) workdays suspension without pay on June 7,

2021 to June 11, 2021, June 21, 2021 to June 25, 2021, and July 19, 2021 to July 23, 2021. Plaintiff's union demanded arbitration to appeal this suspension.

117.    On or about May 27, 2022 and prior to the arbitration hearing, Plaintiff and Defendant NYCDYCD entered into a "Stipulation of Settlement" to meaningfully reduce Plaintiff's suspension without either side admitting to any "guilt" or admission of any violation of the law. But rather this "Stipulation of Settlement" was agreed to because "the parties are desirous of resolving their differences and avoiding litigation."

118.    On or about April 2, 2021, Defendant Sanmoogan falsely accused Plaintiff of wasting time and doing unnecessary work when Plaintiff was simply following Defendant Sanmoogan's direction. This is yet another instance of Defendant Sanmoogan's harassing conduct and her continued effort to create pretextual reasons against Plaintiff.

119.    On or about May 17, 2023, Defendants issued Plaintiff with yet another "Notice and Statement of Charge and Specifications" ("May 17, 2023 Charge") seeking to terminate Plaintiff's employment.

120.    The contents of the May 17, 2023 Charge was amended on or about June 16, 2023, however the primary purpose of seeking to terminate Plaintiff's employment did not change.

121.    The May 17, 2023 Charge was done in retaliation with pretext reasons for Plaintiff's filing of this instant action on or about July 23, 2021[1] as the May 17, 2023 Charge clearly states that the period of Plaintiff's alleged misconduct covered the time period starting from October 2021.

122.    On or about June 27, 2023, at the request of Plaintiff's union, an "informal conference" was held before Defendant NYCDYCD Conference Leader Valerie Mulligan ("Ms.

_____

[1] The Summons and Complaint of the case were subsequently served upon Defendants in August 2021.

Mulligan") to challenge and dispute the May 17, 2023 Charge.

123.   On or about July 10, 2023, Ms. Mulligan issued a written decision ("Mulligan Decision") upholding the May 17, 2023 Charge's recommendation to terminate Plaintiff's employment.

124.   Plaintiff, through her union, made a timely request to appeal the Mulligan Decision for a "Step II" hearing.

125.   A "Step II" hearing was held on or about July 28, 2023 before Defendant NYCDYCD Conference Leader Jessica Raithel ("Ms. Raithel").

126.   On or about August 11, 2023, Ms. Raithel issued a written decision ("Raithel Decision") upholding the Mulligan Decision.

127.   Plaintiff, through her union, then timely requested a "Step III" hearing to appeal the Raithel Decision.

128.   A "Step III" hearing has yet to be scheduled as of the date of this Amended Complaint.

129.   On or about May 26, 2023, Plaintiff was informed by Defendant Sanmoogan during a Microsoft Teams meeting with members of the Finance Unit which Plaintiff was working in that Defendant DYCD will be having a reorganization or restructuring of the Finance Unit.

130.   As a result of this reorganization or restructuring, Plaintiff was informed by Defendant Sanmoogan that the Finance unit will be separated into a revenue sub-unit and an expense sub-unit.

131.   Defendant Sanmoogan informed Plaintiff that Plaintiff will be assigned to work in the revenue sub-unit even though Plaintiff has almost exclusively performed expense related work since joining DYCD.

132.    Plaintiff has only helped with one revenue related task back in early 2018 and prior to her first medical leave.

133.    During the meeting, Defendant Sanmoogan informed everyone that there are people who will be assigned to units in which they have experience in but not Plaintiff.

134.    After the meeting, Plaintiff informed Defendant Sanmoogan by email on the same day of her lack of experience with revenue related work and requested to be assigned to work in the expense sub-unit without receiving a response.

135.    Plaintiff believes that assigning Plaintiff to work in an area which she has virtually no experience was done to set her up for failure as another retaliatory act.

136.    On or about July 10, 2023, Defendant Bailey confirmed that this reorganization was confirmed and finalized.

137.    Upon belief and based on the past history, it is likely that Defendants will only continue to harass, retaliate and discriminate against Plaintiff without judicial intervention.

## COUNT I

### (Violation of ADA Against Defendants NYCDYCD and NYC)

138.    Plaintiff realleges each and every allegation above as though set forth in full herein.

139.    Plaintiff is an individual with disabilities under the meaning of the ADA.

140.    At all relevant time period, Plaintiff was an employee of Defendants NYCDYCD and NYC.

141.    At all relevant time period, Defendants NYCDYCD and NYC were Plaintiff's employers within the meaning of the ADA.

142.    Defendants NYCDYCD and NYC harassed and treated Plaintiff unfairly because of her disabilities in violation of the ADA.

143.    Defendants NYCDYCD and NYC refused to provide any reasonable accommodation to Plaintiff. By the actions described above, Defendants unlawfully discriminated against Plaintiff on the basis of her disabilities.

144.    Plaintiff is as a result entitled to all relief under the ADA.

## COUNT II

**(Disability Discrimination in Violation of the NYSHRL Against all Defendants)**

145.    Plaintiff realleges each and every allegation in paragraphs above as though set forth in full herein.

146.    Plaintiff is a qualified individual with disabilities under the meaning of the NYSHRL.

147.    Defendants are Plaintiff's employer within the meaning of NYSHRL.

148.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her disabilities in violation of the NYSHRL by, *inter alia*, refusing to provide her with a reasonable accommodation for her disabilities and for harassing her regarding same.

149.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, emotional distress and economic harm for which she is entitled to all relief pursuant to NYSHRL.

150.    To the extent that Defendants Sanmoogan, Bailey and Thornton are not individually liable as Plaintiff's employer, Defendants Sanmoogan, Bailey and Thornton personally are liable under the NYSHRL because they aided and abetted the unlawful retaliatory conduct.

## COUNT III

**(Disability Discrimination in Violation of the NYCHRL Against all Defendants)**

151.    Plaintiff realleges each and every allegation in paragraphs above as though set forth

in full herein.

152.    Plaintiff is a qualified individual with disabilities under the meaning of the NYCHRL.

153.    Defendants are Plaintiff's employer within the meaning of NYCHRL.

154.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her disabilities in violation of the NYCHRL by, *inter alia*, refusing to provide with a reasonable accommodation for her disabilities and for harassing her regarding same.

155.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, emotional distress and economic harm for which she is entitled to all relief pursuant to NYCHRL.

156.    To the extent that Defendants Sanmoogan, Bailey and Thornton are not individually liable as Plaintiff's employer, Defendants Sanmoogan, Bailey and Thornton personally are liable under the NYCHRL because they aided and abetted the unlawful retaliatory conduct.

## COUNT IV

### (Retaliation in Violation of ADA)

157.    Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

158.    Plaintiff belongs to a protected class as a result of her disabilities pursuant to the ADA.

159.    Plaintiff engaged in a protected activity when she complained about the unfair treatment because of her disabilities and Defendants NYC and NYCDYCD's refusal to provide her with a reasonable accommodation, for filing her charges with the EEOC and for filing this instant case.

160.    Based on the above, Defendants NYC and NYCDYCD retaliated against Plaintiff by, *inter alia*, refusing to provide her with reasonable accommodation, increasing her workload,

scrutinizing her work and creating pretextual reasons to admonish Plaintiff so to set her up for failure.

161.    Defendants NYC and NYCDYCD harassed and treated Plaintiff unfairly because of her disabilities, and in retaliation for her complaints about such discrimination in violation of the ADA.

162.    Defendants have furthermore continued to retaliate against Plaintiff for her commencement of her EEOC charge and this instant litigation by seeking to terminate Plaintiff's employment on or about May 17, 2023  with pre-textual reasons dating back to October 2021 and by assigning Plaintiff to a sub-unit which Plaintiff has virtually no experience in as a way to set Plaintiff up for failure.

163.    The May 17, 2023 request to terminate Plaintiff's employment was approved on or about July 10, 2023.

164.    Plaintiff is therefore entitled to all relief pursuant to the ADA.

## COUNT V

### (Retaliation In Violation of NYSHRL Against All Defendants)

165.    Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

166.    Plaintiff belongs to a protected class as a result of her disabilities pursuant to NYSHRL.

167.    Plaintiff engaged in a protected activity when she complained about the unfair treatment because of her disabilities and Defendants NYC and NYCDYCD's refusal to provide her with a reasonable accommodation, for filing her charges with the EEOC and for filing this instant case.

168.    Based on the above, Defendants retaliated against Plaintiff by, *inter alia*, refusing to

provide her with reasonable accommodation, increasing her workload, scrutinizing her work and creating pretextual reasons to admonish Plaintiff so to set her up for failure.

169.    Defendants harassed and treated Plaintiff unfairly because of her disabilities, and in retaliation for her complaints about such discrimination in violation of the NYSHRL.

170.    Defendants have furthermore continued to retaliate against Plaintiff for her commencement of this instant litigation by seeking to terminate Plaintiff's employment on or about May 17, 2023 with pre-textual reasons dating back to October 2021 and by assigning Plaintiff to a sub-unit which Plaintiff has virtually no experience in as a way to set Plaintiff up for failure.

171.    The May 17, 2023 request to terminate Plaintiff's employment was approved on or about July 10, 2023.

172.    To the extent that Defendants Sanmoogan, Bailey and Thornton are not individually liable as Plaintiff's employer, Defendants Sanmoogan, Bailey and Thornton personally are liable under the NYSHRL because they aided and abetted the unlawful retaliatory conduct.

173.    Plaintiff is therefore entitled to all relief pursuant to NYSHRL.

## COUNT VI

### (Retaliation In Violation of NYCHRL Against All Defendants)

174.    Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth herein.

175.    Plaintiff belongs to a protected class as a result of her disabilities pursuant to NYCHRL.

176.    Plaintiff engaged in a protected activity when she complained about the unfair treatment because of her disabilities and Defendants NYC and NYCDYCD's refusal to provide her with a reasonable accommodation, for filing her charges with the EEOC and for filing this instant

case.

177.    Based on the above, Defendants retaliated against Plaintiff by, *inter alia*, refusing to provide her with reasonable accommodation, increasing her workload, scrutinizing her work and creating pretextual reasons to admonish Plaintiff so to set her up for failure.

178.    Defendants harassed and treated Plaintiff unfairly because of her disabilities, and in retaliation for her complaints about such discrimination in violation of the NYCHRL.

179.    Defendants have furthermore continued to retaliate against Plaintiff for her commencement of this instant litigation by seeking to terminate Plaintiff's employment on or about May 17, 2023 with pre-textual reasons dating back to October 2021 and by assigning Plaintiff to a sub-unit which Plaintiff has virtually no experience in as a way to set Plaintiff up for failure.

180.    The May 17, 2023 request to terminate Plaintiff's employment was approved on or about July 10, 2023.

181.    To the extent that Defendants Sanmoogan, Bailey and Thornton are not individually liable as Plaintiff's employer, Defendants Sanmoogan, Bailey and Thornton personally are liable under the NYCHRL because they aided and abetted the unlawful retaliatory conduct.

182.    Plaintiff is therefore entitled to all relief pursuant to NYCHRL.

## <u>COUNT VII</u>

### (Retaliation In Violation of FMLA Against Defendants NYCDYCD AND NYC)

183.    Plaintiff realleges each and every allegation in paragraphs above as though set forth in full herein.

184.    Defendants NYCDYCD and NYC have at least fifty employees during the relevant time period.

185.    Plaintiff engaged in a protected activity when she took sick time off pursuant to

FMLA.

186.    Based on the above, Defendants retaliated against Plaintiff for taking her FMLA leave by, *inter alia*, refusing to provide her with accommodation for her disabilities, increasing her workload, scrutinizing her work and creating pretextual reasons to admonish Plaintiff so to set her up for failure, after Plaintiff returned from her FMLA leave.

187.    Plaintiff is as a result entitled to all relief pursuant to the FMLA.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

A.    declaring that Defendants' actions and practices violated the Americans with Disabilities Act, Family and Medical Leave Act, New York State Human Rights Law, and New York City Human Rights Law;

B.    enjoining Defendants from further discriminatory and retaliatory conduct;

C.    directing Defendants to provide Plaintiff the reasonable accommodation she is entitled to;

D.    to make Plaintiff whole by providing her loss of pay and benefits;

E.    directing Defendants to pay Plaintiff compensatory damages for her emotional distress caused by Defendants' discriminatory conduct;

F.    directing Defendants to pay Plaintiff punitive damages sufficient to punish and deter continuation of Defendants' unlawful employment practices;

G.    directing Defendants to pay for Plaintiff's reasonable attorneys' fees and legal expenses; and

H.    granting additional relief as this Court deems just and proper.

Dated: New York, New York
        March 25, 2024

                                        WILLIAM K. LI LAW, PLLC

                                        */s/ William Li*
                                        William Li
                                        535 Fifth Avenue, 4th Floor
                                        New York, NY 10017
                                        *Counsel for Plaintiff*